IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| RUSTY KISSEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:08-cv-03436-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. | |

**O R D E R**

Plaintiff Rusty Kissee challenges the Social Security Commissioner's ("Commissioner") denial of his application for supplemental security income benefits under Title XVI of the Social Security Act, as amended ("the Act"). Mr. Kissee has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 1383(c). Mr. Kissee argues that the record does not support the Administrative Law Judge's ("ALJ") finding that he was not under a disability because: (1) the ALJ failed to conduct a proper analysis of and give proper weight to the medical opinions of Dr. Eva Wilson, and (2) the ALJ improperly determined Mr. Kissee's residual functional capacity ("RFC") by not considering all of the substantial evidence of record and by failing to indicate what evidence she relied upon in making her RFC determination. Because this Court finds no reversible error in the ALJ's decision, Mr. Kissee's Petition [Doc. # 4] is denied.

**I.     Background**

1

## A. Procedural History

Mr. Kissee filed his initial application for supplemental security income under Title XVI of the Act on April 11, 2006, in which he alleged disability beginning on May 1, 2004. This application was denied by the Commissioner on July 18, 2006. Mr. Kissee applied for and was granted a hearing before ALJ Linda D. Carter, which took place on April 17, 2008, in Springfield, Missouri. The ALJ rendered her decision on May 13, 2008, finding that Mr. Kissee was not under a disability. Mr. Kissee requested review of that decision by the Appeals Council of the Social Security Administration, and that request was denied on September 25, 2008, making the ALJ's determination the final determination of the Commissioner. On December 1, 2008, Mr. Kissee filed a timely complaint with this Court challenging the Commissioner's final determination.

## B. Factual History[1]

Mr. Kissee was born on July 15, 1986, and was 19 years old at the time of his application for supplemental security income and 21 years old at the time of his hearing before the ALJ. According to the ALJ, Mr. Kissee suffers from the following severe impairments: depression, anxiety disorder (not otherwise specified), cognitive disorder (not otherwise specified), and borderline intellectual functioning. The ALJ also noted that Mr.

---

[1] The complete facts and arguments are presented in the parties' briefs [Docs. ## 8, 11] and are duplicated here only to the extent necessary. Portions of the parties' briefs may be adopted without quotation designated.

Kissee has a history of otitis media,[2] but she concluded this condition was non-severe and had no more than a *de minimis* effect on his ability to work.

Mr. Kissee has never been employed for a significant duration,[3] which he blames on his mental and physical health problems. He testified that work tends to make him "worked up and unbearable" and that he tends to panic and walk out. His work history indicates that he has not worked since January 2004, but he has been seeking work since at least December 2007.

The evidence of record consists primarily of testimony and treatment records from Mr. Kissee himself and from six professionals who have been involved in Mr. Kissee's treatment: Dr. Eva Wilson, Psy.D., a psychologist; Dr. Joseph Babin, M.D., a psychiatrist; Paula Barnes, N.P.C., a nurse practitioner; Dr. Matthew Stinson, M.D., a primary care physician; Dr. James Jarvis, D.Min., a minister and counselor; and Dr. Craig Shifrin, Psy.D., a psychologist.[4]

Mr. Kissee testified that he dropped out of school at tenth grade. He tried to get a

---

[2]Otitis media is inflammation of the middle ear. *Stedman's Medical Dictionary* 1272 (Marjory Spraycar ed., 26th ed. 1995).

[3]Mr. Kissee's work history form listed three previous jobs: grocery store bag boy, restaurant cashier, and restaurant cook. The durations of these periods of employment were approximately one month, less than one month, and approximately eight months, respectively.

[4]The treatment notes in the record also include a psychiatric evaluation by Dr. Lori Breedlove in 2000, prior to the alleged onset of his disability or the filing of his social security application, when Mr. Kissee was 14 years old. At that time he was assessed with psychotic disorder, obsessive compulsive disorder, borderline intellectual functioning, somatic complaints, among other diagnoses. Because supplemental security income is awarded based only on whether a claimant was disabled while the application was pending, this treatment is of only tangential relevance. *See* 20 C.F.R. § 416.335 (2008).

general education development diploma, but anxiety stopped him from taking the test. While he can read and write, he has difficulty spelling many words and recalling what he reads. He had a driver's license, but it was suspended due to speeding tickets, and he testified he has no plans to get another license because he is unable to handle the pressure of driving. He lives with his girlfriend and two of his three children, who were 21 months and 2 months old at the time of the ALJ hearing. His girlfriend works outside of the home, and Mr. Kissee takes care of the children in her absence. Although he testified that he tries to get out of the house every week to do simple errands like taking his children to doctor's appointments, he said it is very difficult for him to be in places other than his home or around groups of people. He is capable of doing household chores and testified that he can be obsessive and uptight about cleaning. He has difficulty sleeping and testified that he generally sleeps no more than six hours per night. He claims to occasionally hear voices, and he becomes paranoid and feels like he is being watched. Although he did not recount any instances of physical violence, he did say he tended to be "verbally violent." He further testified that he has difficulty concentrating or staying on task and that he often forgets things. He indicated a past history of hallucinations and suicidal thoughts, but none lately.

Dr. Wilson performed a psychological evaluation of Mr. Kissee in March 2006 after a referral from the county Division of Family Services. Mr. Kissee reported that he had a history of anxiety attacks, does not like crowds, dropped out of school due to anxiety, and quit his last job due to a panic attack at work. Upon examination, he was cooperative but anxious. According to Dr. Wilson, Mr. Kissee presented as someone "very paralyzed by his

anxiety" and "much in need of medicine and counseling." She said Mr. Kissee could understand simple and semi-complex instructions, but she believed he would have a "great deal of trouble sustaining concentration and persistence with any tasks without medication and counseling." She noted that although medication seemed to have helped in the past, Mr. Kissee was not on any medications at the time of the consultation. She also noted that he had not had psychotherapy in the past, and opined that it was "difficult to say whether or not this would help him enough to maintain employment."

No other record of treatment by Dr. Wilson exists until April 2, 2008 (roughly two weeks before Mr. Kissee's ALJ hearing), when she provided a "Medical Source Statement – Mental," which was a form on which she checked boxes in response to prompts. This statement indicated that Mr. Kissee had numerous moderate to marked limitations in performing mental work-related tasks. Specifically, Dr. Wilson checked boxes indicating that Mr. Kissee was markedly limited in his ability to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerance, to complete a normal workday and workweek without interruption from his psychological symptoms, and to perform at a consistent pace without an unusual amount of rest time. However, the ALJ accorded "little weight" to this statement for four reasons: (1) it did not show on its face that Dr. Wilson had evaluated Mr. Kissee currently or reviewed any records besides her own 2006 treatment notes; (2) it was dated two years after Dr. Wilson's last recorded treatment or evaluation of Mr. Kissee; (3) it did not indicate what, if any, directions, guidelines, or specifics were included in Mr.

Kissee's attorney's request for the statement; and (4) it was inconsistent with Mr. Kissee's current level of functioning, as indicated by the other evidence in the record

In May 2006, Dr. Babin evaluated Mr. Kissee for complaints of anxiety attacks and difficulty working or being around other people. Dr. Babin diagnosed Mr. Kissee with an anxiety disorder with social phobia, prescribed some medication, and advised him to see a counselor and return in a month. When Mr. Kissee returned in June 2006, he had not seen a counselor and reported that he had stopped taking his medication because it gave him "the shakes." Dr. Babin modified his prescription. Dr. Babin continued treating Mr. Kissee for several months, noting at least once that Mr. Kissee's anxiety caused him to quit or to miss work. In April 2007, Mr. Kissee had laboratory tests done (as Dr. Babin had been advising for some time), and he tested positive for marijuana. Dr. Babin advised Mr. Kissee that he would need to do a drug screen prior to his next visit. He told Mr. Kissee that if he tested positive for marijuana again, he would discontinue his treatment. Plaintiff never returned to see Dr. Babin.

Ms. Barnes examined Mr. Kissee in May and June 2007. She noted that he had problems with panic attacks, anger, irritability, depression, and anxiety. The nurse noted a major depressive disorder and prescribed medication.

Dr. Stinson began monthly treatment and evaluation of Mr. Kissee in June 2007. During his intake examination, Dr. Stinson noted that Mr. Kissee experienced anxiety, depression, occasional hallucinations, and panic attacks. On July 9, 2007, Mr. Kissee was noted to stutter when around other people due to his anxiety. He returned to Dr. Stinson's

6

office on July 30, 2007, and reported that he was trying to do more activities but began experiencing significant social anxiety when he did. On August 27, 2007, Mr. Kissee reported that he was able to hold a job for two weeks, but continued to experience anxiety in stressful situations with occasional panic attacks and was eventually fired as a result. Dr. Stinson noted that holding a job this long was a large improvement for Mr. Kissee. On September 9, 2007, Dr. Stinson wrote a letter stating that Mr. Kissee suffered from panic attacks and was improving, but his symptoms would still cause problems with work. In October and November 2007, Dr. Stinson noted that Mr. Kissee's symptoms were continuing to make it difficult to get a job due to his severe anxiety and inability to function. Mr. Kissee continued to receive monthly treatment for his anxiety and depression through February 2008 and was noted to have continued mood swings with significant anxiety and anger.

Mr. Kissee began counseling with Dr. Jarvis in December 2007. Mr. Kissee reported to the minister that he continued to experience panic attacks and trouble around other people due to his anxiety. Dr. Jarvis noted that Mr. Kissee tended to become angry over little things, had trouble in public places, and chronically experienced anxiety-related symptoms. At his last treatment before Mr. Kissee's ALJ hearing, Dr. Jarvis opined that Mr. Kissee was depressed, noting that he failed to get out of the house each day and spent most of his time doing nothing. Dr. Jarvis continually encouraged Mr. Kissee to leave his house and to apply for jobs. In December 2007 and January 2008, Mr. Kissee reported to Dr. Jarvis that he had been unsuccessfully searching for employment, and Dr. Jarvis encouraged him to contact vocational services. It appears Mr. Kissee has not contacted vocational services, and it is

7

unclear whether he was still searching for a job at the time of his ALJ hearing.

Finally, Mr. Kissee had one session with Dr. Shifrin, but subsequently cancelled several sessions. After a dispute between Dr. Shifrin and Mr. Kissee's mother, the psychologist cancelled his treatment of Mr. Kissee. Dr. Shifrin, who treated Mr. Kissee just once, did not have enough information to form an opinion as to Mr. Kissee's capacity for work.

After reviewing this and other evidence, the ALJ made the following determination as to Mr. Kissee's RFC:

> [Mr. Kissee] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: due to his psychological disorders, he can perform only simple repetitive (1-, 2-, 3-step tasks), cannot work with the public, can have minimal proximity to coworkers but not engage in teamwork. He can handle only minimal use of independent judgment and minimal changes in the work setting. Due to his limited education, he can read and write only simple, rote words.

Considering this RFC, as well as Mr. Kissee's age, education, and work experience, a vocational expert, Terri Crawford, testified that Mr. Kissee could work in jobs available in substantial quantities in the national economy. Specifically, she opined that he could satisfy the requirements of representative occupations such as medium unskilled cleaner II *(Directory of Occupational Titles* # 919.687-014), of which there are 4,400 jobs in Missouri and 192,000 in the United States, or medium unskilled kitchen helper (*Directory of Occupational Titles* # 318.687-010), of which there are 4,700 jobs in Missouri and 195,000 jobs in the United States.

## II.     Discussion

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008). "The decision of the ALJ is not outside the zone of choice simply because [a reviewing court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quotation omitted).

The Commissioner's regulations governing determinations of disability establish a five-step sequential evaluation process which ALJs must use in assessing disability claims. *See* 20 C.F.R. §§ 404.1520; 416.920 (2008). In the first three steps of the process, the Commissioner determines whether the claimant is engaged in substantial gainful activity, whether he or she has a medically determinable impairment that is "severe" under the meaning of the Act, and whether the claimant suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, a claimant must establish that his or her RFC is such that he or she is not able to return to any past relevant work. *Id. See also, e.g.*, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (clarifying that the claimant has the burden of showing an inability to work). If the claimant establishes that he or she is unable to return to past relevant work, the burden shifts

to the Commissioner to show that the claimant can perform some work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520; 416.920. The Commissioner may meet this step five burden by relying on the medical-vocational guidelines or on vocational expert testimony. *See Pearsall*, 274 F.3d at 1219.

### A. The ALJ Properly Considered Dr. Wilson's Testimony.

Social Security Administration regulations and rulings address the manner in which the opinions of treating physicians should be considered. *See* 20 C.F.R. § 426.927; S.S.R. 96-2p. A treating physician's opinion is due controlling weight when it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2)). However, a treating physician's opinion should not be given controlling weight when it is inconsistent with other substantial evidence in the record. S.S.R. 96-2p. *See also Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole . . . ."). Specifically, if a treating physician's own treatment notes are not consistent with their functional capacity opinion, the opinion is not due controlling weight. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). If an ALJ issues an unfavorable decision, he or she must give "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." S.S.R. 96-2p.

The regulations also distinguish between treating physicians and examining physicians. *See generally* 20 C.F.R. § 416.927(d). It is the ALJ's job to resolve conflicts between the opinions of treating physicians and those of doctors who have conducted a one-time examination. *See Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). "As a general matter, the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Id.* (internal quotation omitted). However, if a treating physician's opinion is properly discredited, it is within the zone of choice for an ALJ to give that opinion less weight than that of a one-time examining physician. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

When evidence received from a medical source is inadequate to determine whether a claimant is disabled, and ALJ is required to re-contact the medical source and determine whether any other information is available that could resolve the ambiguity. 20 C.F.R. § 404.1512(e). However, the Eighth Circuit has held that when treatment notes are sufficient to show what is the basis for a medical source's ambiguous opinion, an ALJ need not re-contact the medical source. *See Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

Mr. Kissee alleges that the ALJ improperly determined that Dr. Wilson's opinion should be given little weight and that she failed to adequately explain the reasoning behind the weight given to Dr. Wilson's opinion. As a threshold matter, Dr. Wilson's opinion is not that of a treating physician; she examined Mr. Kissee just one time on a referral from the

11

Division of Family Services, and she prescribed no medication and offered no treatment. As such, her opinion is not substantial evidence of the record as a whole under the criteria outlined in *Cantrell*.

However, even assuming, *arguendo*, that Dr. Wilson was a treating physician, there is substantial evidence to support the ALJ's decision to give her opinion little weight. The ALJ gave four specific reasons for discrediting Dr. Wilson's opinions, each of which are supported by the record as a whole and are explained with sufficient clarity, as required by S.S.R. 96-2p, for this Court to understand the weight given to the opinions and the reasons for giving it that weight.

First, the ALJ noted that Dr. Wilson had examined Mr. Kissee only once and appeared not to have reviewed any other medical records or treatment notes in preparing her Medical Source Statement. Second, the ALJ pointed out that Dr. Wilson prepared her Medical Source Statement two full years after her last examination of Mr. Kissee. Third, the ALJ was skeptical of the Medical Source Statement because it did not provide any insight as to what directions or specifics Mr. Kissee's attorney had requested from Dr. Wilson. Finally (and most importantly), the ALJ discredited the Medical Source Statement because it was inconsistent with Mr. Kissee's current level of functioning, as evinced by the medical and other evidence recounted in the ALJ's opinion. Specifically, the ALJ noted that Mr. Kissee had been searching for a job for some time on the encouragement of his counselor, which indicates that neither he nor his counselor believed he was too disabled to work. Moreover, the ALJ viewed Mr. Kissee's work record as "draw[ing] into question his motivation to

12

work." The ALJ's opinion noted several other important pieces of evidence inconsistent with Dr. Wilson's Medical Source Statement, including Mr. Kissee's own testimony that he is qualified and able to care for his young children and Dr. Stinson's records, which indicate Mr. Kissee's marked improvement with medication.[5]

Plaintiff argues that if the ALJ thought Dr. Wilson's Medical Source Statement did not show an adequate basis for her opinion, then the ALJ should have re-contacted the doctor as required by 20 C.F.R. § 404.1512(e). However, the ALJ did not posit that the Medical Source Statement was not enough information to make a determination, as contemplated by 20 C.F.R. § 404.1512(e). Instead, she argued that the Medical Source Statement was contradicted by other substantial evidence, which she outlined in her opinion. Dr. Wilson examined Mr. Kissee just once, and the ALJ was in possession of Dr. Wilson's notes from that examination; it is difficult to see what could have been gained by re-contacting her. Thus, the ALJ had no duty to re-contact any medical source.

Because this Court is convinced that the ALJ had a substantial basis in evidence for giving little weight to the Medical Source Statement prepared by Dr. Wilson, it finds no error in the ALJ's evaluation of the medical evidence of record.

    **B.    The ALJ Properly Determined Mr. Kissee's Residual Functional Capacity.**

---

[5]Although the ALJ's opinion did not specifically reference this evidence, it is noteworthy that Dr. Wilson's own treatment notes state, "It is difficult to say whether or not [medication] would help him enough to maintain employment. This remains to be seen." Tr. 228. Dr. Wilson made this statement after her first and only evaluation of Mr. Kissee, just shy of two years before Dr. Stinson noted the success of Mr. Kissee's medication and while Mr. Kissee was not taking any medication.

13

RFC is a "function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004). Put another way, RFC is the most an individual can do despite the combined effect of all credible limitations. 20 C.F.R. § 416.945. It is the claimant's – not the Commissioner's – burden to establish that his or her RFC is such that he or she is not able to return to any past relevant work. *Id.* at § 416.920. *See also Pearsall* 274 F.3d at 1217 (clarifying that the claimant has the burden of showing an inability to work). The ALJ need only include limitations that he or she finds credible. *See Pearsall*, 274 F.3d at 1218 (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987)). The ALJ's RFC determination must be based on some medical evidence, and he or she is not able to substitute his or her own opinion. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Still, the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Id.* (internal quotation omitted).

Mr. Kissee focuses his RFC argument on the ALJ's failure to give great weight to Dr. Wilson's Medical Source Statement. However, as outlined in subsection (a), *supra*, the ALJ's decision to give little weight to Dr. Wilson's opinion testimony was supported by substantial evidence. Mr. Kissee alleges no specific error as to the ALJ's determination that Mr. Kissee was not a credible source in evaluating his subjective complaints, a determination that is supported by substantial evidence outlined in the ALJ's decision.

Plaintiff also argues that the ALJ "failed to provide any discussion on how the medical evidence supported her conclusions." This argument is unsupported; the ALJ offered more

14

than three pages of discussion of the evidence she reviewed and considered to support her RFC decision. *Cf. Wiese*, 552 F.3d at 733-34 ("Indeed, the ALJ wrote nearly four full pages of analysis regarding the consistency between [the claimant's] self-reports contained in the record, her treating physicians' notes and assessments, the medical evidence and the hearing testimony. In doing so, the ALJ provided a thorough analysis of the inconsistencies he noted in the record, and those inconsistencies are supported by the record."). Because the ALJ properly discounted Dr. Wilson's Medical Source Statement and thoroughly recounted the medical and non-medical evidence on which she based her RFC determination, this Court finds that the ALJ's RFC determination is supported by substantial evidence.

### III.     Conclusion

Accordingly, it is hereby

ORDERED that Mr. Kissee's Petition [Doc. # 4] is DENIED.

 s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:   July 13, 2009
Jefferson City, Missouri

15